# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

JAMES W.[1],  
      Plaintiff,

vs.

COMMISSIONER OF  
SOCIAL SECURITY,  
      Defendant.

Case No. 1:23-cv-819  
Litkovitz, M.J.

**ORDER**

Plaintiff James W. brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying his application for disability insurance benefits (DIB).  This matter is before the Court on plaintiff's Statement of Errors (Doc. 7), the Commissioner's response in opposition (Doc. 8), and plaintiff's reply memorandum (Doc. 9).

## I.      Procedural Background

Plaintiff filed an application for DIB on April 1, 2021, and alleged an amended onset of disability of April 2, 2020, due to neuropathy, left leg spasms and instability due to loss of sensation, hypertension, human immunodeficiency virus (HIV), seizures, anxiety, and post-traumatic stress disorder (PTSD).  (Tr. 11, 180-84, *see also* Tr. 202).  The application was denied initially and upon reconsideration.  Plaintiff, through counsel, requested and was granted a *de novo* telephone hearing before administrative law judge (ALJ) Renita K. Bivins.  Plaintiff and a vocational expert (VE) appeared and testified at the hearing on September 13, 2022.  (Tr. 41-78).  On October 31, 2022, the ALJ issued a decision, concluding that plaintiff was not disabled.  (Tr.

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

8-33).  This decision became the final decision of the Commissioner when the Appeals Council

denied review on October 17, 2023.  (Tr. 1-7).

## II.     Analysis

### A.  Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable

physical or mental impairment that can be expected to result in death or that has lasted or can be

expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 423(d)(1)(A).

The impairment must render the claimant unable to engage in the work previously performed or

in any other substantial gainful employment that exists in the national economy.  42 U.S.C. §§

423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation

process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or
mental impairment – *i.e.*, an impairment that significantly limits his or her
physical or mental ability to do basic work activities – the claimant is not
disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the
listings in Appendix 1 to Subpart P of the regulations and meets the duration
requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her
past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not
disabled.  If the claimant cannot make an adjustment to other work, the claimant
is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§

404.1520(a)(4)(i)-(v), 404.1520(b)-(g)).  The claimant has the burden of proof at the first four

2

steps of the sequential evaluation process.  *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548

(6th Cir. 2004).  Once the claimant establishes a prima facie case by showing an inability to

perform the relevant previous employment, the burden shifts to the Commissioner to show that

the claimant can perform other substantial gainful employment and that such employment exists

in the national economy.  *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th

Cir. 1999).

### B.  The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of

fact and conclusions of law:

1. [Plaintiff] meets the insured status requirements of the Social Security Act
through December 31, 2025.

2. [Plaintiff] has not engaged in substantial gainful activity since April 2, 2020, the
alleged onset date (20 CFR 404.1571 *et seq*.).

3. [Plaintiff] has the following severe impairments: disorders of the skeletal spine
status post (s/p) L4-5 transforaminal lumbar interbody fusion/TLIF; peripheral
neuropathy; symptomatic human immunodeficiency virus infection (HIV);
essential hypertension; depressive, bipolar and related disorder; trauma and stress
related disorder; anxiety (20 CFR 404.1520(c)).

4. [Plaintiff] does not have an impairment or combination of impairments that meets
or medically equals the severity of one of the listed impairments in 20 CFR Part
404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the [ALJ] find[s] that [plaintiff]
has the residual functional capacity to perform light work as defined in 20 CFR
404.1567(b) except he is able to lift and carry up to 20 pounds occasionally and 10
pounds frequently; able to stand and/or walk 4 hours per 8-hour day and sit for 6
hours per 8-hour day with normal breaks. He can frequently climb ramps and stairs;
never climb ladders, ropes or scaffolds; can occasionally balance as defined in the
Selected Characteristics of Occupations (SCO); can occasionally stoop, frequently
kneel and crouch and occasionally crawl. He must avoid all exposure to unprotected
heights of climbing ladders, ropes, or scaffolds, operating heavy machinery and
commercial driving. He can understand, remember, carry out simple instructions;
able to maintain concentration and attention and sustained persistence and pace for
2-hour segments to complete simple tasks; can interact with public, coworkers and

supervisors occasionally or no more than one-third of the workday with no tandem tasks, no requirement for arbitration, conflict resolution, management or supervision of others; and he can adapt to simple routine changes in a work environment where any major changes can be explained.

6. [Plaintiff] is unable to perform any past relevant work (20 CFR 404.1565).[2]

7. [Plaintiff] was born [in]… 1972 and was 47 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. [Plaintiff] has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569 and 404.1569a).[3]

11. [Plaintiff] has not been under a disability, as defined in the Social Security Act, from April 2, 2020, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 13-29).

## C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards.  *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 745-46 (6th Cir. 2007).

---

[2] Plaintiff's past relevant work was as a housekeeping cleaner, a light, unskilled position. (Tr. 26-27, 71).
[3] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative unskilled, light occupations in the national economy such as router (25,000 jobs in the national economy), collator operator (20,000 jobs in the national economy), and electronic assembler/sub-assembler jobs (20,000 jobs in the national economy).  (Tr. 27-28, 72-73).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545–46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Specific Errors**

Plaintiff's raises three assignments of error: (1) the ALJ did not properly determine plaintiff's residual functional capacity (RFC) (Doc. 7 at PageID 2242-45); (2) the ALJ erred in her assessment of his subjective symptoms (*Id.* at PageID 2245-6); and (3) the ALJ committed vocational errors (*Id.* at PageID 2246).

**E.    Analysis**

**1.  RFC Determination and Subjective Symptom Analysis**

A claimant's RFC is an assessment of "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). A claimant's RFC assessment must be based on all the relevant evidence in his case file. (*Id*.). The governing regulations[4] describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. § 404.1513(a)(1)-(5). With regard to two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a).

The ALJ is charged with the final responsibility in determining a claimant's RFC. *See* 20 C.F.R. § 404.1546(c). The ALJ is responsible for assessing a claimant's RFC based on all of the relevant medical and other evidence. 20 C.F.R. § 404.1545(a)(3). *See also Moore v. Astrue*, No. 07-204, 2008 WL 2051019, at *5 (E.D. Ky. May 12, 2008) ("[T]he ALJ is responsible for assessing a claimant's [RFC] by examining all the evidence in the record.") (citing 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c)); *Bingaman v. Comm'r of Soc. Sec.*, 186 F. App'x 642, 647 (6th Cir. 2006)).

ALJs must "consider all of the evidence in an individual's record" and determine whether the individual is disabled by examining "all of the individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the individual's record." SSR 16-3p, 2016 WL 1119029, at *2. ALJs also evaluate what the agency formerly termed the "credibility" of a plaintiff's

---

[4] Plaintiff's application was filed after March 27, 2017. Therefore, it is governed by revised regulations redefining how evidence is categorized and evaluated when an RFC is assessed. *See* 20 C.F.R. §§ 404.1513(a), 404.1520c.

statements about his or her symptoms. *See, e.g.*, *Rogers*, 486 F.3d at 246-49. In March 2016, the agency eliminated its use of the term "credibility" and clarified "that subjective symptom evaluation is not an examination of an individual's character. . . ." SSR 16-3p, 2016 WL 1119029, at *1 (March 16, 2016) (rescinding and superseding SSR 96-7p). To avoid such mistaken emphasis, this analysis is now characterized as the "consistency" of a claimant's subjective description of symptoms with the record. *See Lipanye v. Comm'r of Soc. Sec.*, 802 F. App'x 165, 171 n.3 (6th Cir. 2020) (citing *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016)).

A two-step inquiry applies to symptom evaluation. The ALJ first determines if the record contains objective medical evidence of an underlying medically determinable impairment that could reasonably be expected to produce the individual's symptoms. SSR 16-3p, 2016 WL 1119029, at *3; *see also* 20 C.F.R. § 404.1529(a); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475-76 (6th Cir. 2003). Step two of symptom evaluation shifts to the severity of a claimant's symptoms. The ALJ must consider the intensity and persistence of the symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities. *See* 20 C.F.R. §§ 404.1529(a) and (c); SSR16-3p, 2016 WL 1119029, at *4. In making this determination, the ALJ will consider the following:

(i) Your daily activities;

(ii) The location, duration, frequency, and intensity of your pain or other symptoms;

(iii) Precipitating and aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

(v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

(vi)     Any measures you use or have used to relieve your pain or other
symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes
every hour, sleeping on a board, etc.); and

(vii)    Other factors concerning your functional limitations and restrictions due to
pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

An ALJ may not consider only objective medical evidence in determining disability

unless this evidence alone supports a finding of disability. SSR 16-3p, 2016 WL 1119029, at *5

("If we cannot make a disability determination or decision that is fully favorable based solely on

objective medical evidence, then we carefully consider other evidence in the record in reaching a

conclusion about the intensity, persistence, and limiting effects of an individual's symptoms.");

20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and

persistence of your pain or other symptoms or about the effect your symptoms have on your

ability to work solely because the available objective medical evidence does not substantiate

your statements."). Moreover,

> [i]t is . . . not enough for our adjudicators simply to recite the factors described in
> the regulations for evaluating symptoms. The determination or decision must
> contain specific reasons for the weight given to the individual's symptoms, be
> consistent with and supported by the evidence, and be clearly articulated so the
> individual and any subsequent reviewer can assess how the adjudicator evaluated
> the individual's symptoms.

SSR 16-3p, 2016 WL 1119029, at *9. *See also Id.* at *7 (noting that the ALJ "will discuss the

factors pertinent to the evidence of record"). At the same time, the ALJ is not required to cite or

discuss every factor used to evaluate the consistency of a plaintiff's description of symptoms

with the record evidence. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009).

Plaintiff argues that the ALJ did not properly determine both his physical and mental

RFC because she failed to "build an accurate and logical bridge" between the evidence and her

8

finding of light work.  (Doc. 7 at PageID 2241-42).  Plaintiff's assignment of error is two-fold.

First, plaintiff argues that the ALJ improperly weighed the opinions of the state agency

consultants, plaintiff's treating physicians, and the vocational expert testimony in determining

that plaintiff has the physical RFC to perform light work as defined in 20 CFR § 404.1567(b),

with additional limitations.  (*Id*. at PageID 2242).  Plaintiff also alleges the ALJ erred in her

evaluation of plaintiff's physical symptoms by discounting plaintiff's subjective symptom of

fatigue from his HIV.  (Doc. 7 at PageID 2245-46).  Second, plaintiff argues the ALJ's

determination of his mental RFC does not account for the difficulties he experiences when

interacting with others and disregards evidence documenting plaintiff's "history of impulsivity

and borderline traits."  (*Id.* at PageID 2245-46).

### a. Physical RFC Finding and the ALJ's Evaluation of Medical Opinion Evidence

ALJs must adhere to agency regulations governing the evaluation of medical opinion

evidence.  Under the regulations applicable to plaintiff's claims, the Commissioner will "not

defer or give any specific evidentiary weight, including controlling weight, to any medical

opinion(s) or prior administrative medical finding(s)[5], including those from your medical

sources."  20 C.F.R. § 404.1520c(a).  Rather, the Commissioner will consider "how persuasive"

the medical opinion is.  20 C.F.R. § 404.1520c(b).

In determining the persuasiveness of a medical opinion, the ALJ considers five factors:

(1) supportability, (2) consistency, (3) relationship with the claimant, including length of

---

[5] A "prior administrative medical finding" is defined as "[a] finding, other than the ultimate determination about whether the individual is disabled, about a medical issue made by an MC [medical consultant] or PC [psychological consultant] at a prior administrative level in the current claim."  82 Fed. Reg. 5844-01, 2017 WL 168819, at *5850.  For clarity, the Court will refer to the limitations opined by the state agency reviewing physicians and psychologists as "assessments" or "opinions."

treatment relationship, frequency of examinations, purpose of the treatment relationship, and examining relationship, (4) specialization, and (5) other factors that tend to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(c)(1)-(5). The most important factors the ALJ must consider are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). With respect to the supportability factor, "[t]he more relevant the objective medical evidence[6] and supporting explanations presented by a medical source are to support his or his medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). Similarly, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s). . . ." 20 C.F.R. § 404.1520c(c)(2). The ALJ is required to "explain how [he/she] considered the supportability and consistency factors for a medical source's medical opinions" in the written decision. 20 C.F.R. § 404.1520c(b)(2). Conversely, the ALJ "may, but [is] not required to, explain" how he/she considered the relationship, specialization, and other factors set forth in paragraphs (c)(3) through (c)(5) of the regulation. *Id.* However, where two or more medical opinions or prior administrative findings about the same issue are equally persuasive, the ALJ must articulate how he or she "considered the other most persuasive factors in paragraphs (c)(3) through (c)(5). . . ." 20 C.F.R. § 404.1520c(b)(3). Finally, the ALJ is not required to articulate how he or she considered evidence from nonmedical sources. 20 C.F.R. § 404.1520c(d).

State agency consultant, Leon Hughes, M.D., reviewed plaintiff's record initially in July 2021. (Tr. 80-86). Based on his review of the record, Dr. Hughes concluded that plaintiff is limited to lifting 20 pounds occasionally and 10 pounds frequently, sitting for a total of 6 hours

---

[6] Objective medical evidence is defined as "signs, laboratory findings, or both." 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5850.

and standing/walking for 4 hours total during any given 8-hour workday. (Tr. 85-86). He can

frequently climb ramps and stairs; never climb ladders, ropes, or scaffolds; frequently stoop,

kneel, crouch, and crawl; and occasionally balance. (*Id.*). Dr. Hughes found plaintiff should

avoid all hazards, all exposure to unprotected heights, operating heavy machinery, and

commercial driving. (*Id.*). State agency reviewing physician, W. Scott Bolz, M.D., reviewed

plaintiff's file upon reconsideration in December 2021 and affirmed Dr. Hughes's assessment,

except that plaintiff can only occasionally stoop and crawl. (Tr. 96-97). Dr. Bolz indicated that

plaintiff demonstrates the maximum sustained work capability of "[s]edentary"; however, he also

cited an exception, noting:

> [Plaintiff]'s RFC limits him to 4 hours stand/walk which is in-between a light and
> sedentary. The [s]edentary voc[ational] rule was used [because plaintiff]'s other
> postural and environmental limitations would further erode light occupational base
> closer to sedentary. Both [l]ight and sedentary RFC would lead to a determination
> of not disabled [under the Grid], therefore the exception was cited above.

(Tr. 99-100).

In evaluating the prior administrative medical findings, the ALJ considered the opinions

of Dr. Hughes and Dr. Boltz to be somewhat persuasive. The ALJ noted that "[s]tate agency

physicians and psychologists are deemed to possess specific 'understanding of our disability

programs and their evidentiary requirements,'" but she nevertheless "accord[ed] limited

consideration to these opinions." (Tr. 23). Noting that she "specifically considered

supportability, consistency, specialization, and other factors" when evaluating the opinions of

state agency consultants, the ALJ concluded that "Dr. Hughes' opinion is not well supported in

light of other substantial evidence in the record" because "no medical records generated or

provided after [Dr. Hughes' opinion] were considered [by Dr. Hughes]." (*Id.*). The ALJ found

Dr. Bolz's opinion more persuasive than that of Dr. Hughes, explaining:

11

> Additional medical evidence received in the course of developing [plaintiff]'s case has been reviewed by Dr. Bolz. Moreover, additional evidence including testimony at the hearing, consistent with medical evidence in the record justifies a conclusion that [plaintiff]'s impairments are no more limiting than was concluded by Dr. Bolz. Notably, Dr. Bolz found [plaintiff] with more limiting ability to walk/stand due to his lumbar surgery in October 2021, and post-surgery record that shows [plaintiff] to be doing well with majority resolution of his pre-op symptoms. Moreover, Dr. Bolz noted [plaintiff]'s ongoing reduced strength in the bilateral lower extremities and decreased heel strike and weight shift on the left during physical therapy. These additional clinical observations are supported and consistent with the overall record review by the undersigned. Consequently, Dr. Bolz's opinion is accorded additional consideration in its supporting context to the extent an opinion is supported by specific and complete clinical findings and are consistent with the rest of the evidence in file.

(Tr. 23).

Plaintiff argues that the ALJ "made a material error by failing to note that Dr. Bolz only found sedentary work and not light work." (*Id.* at PageID 2242, citing Tr. 99). Plaintiff asserts that "it is illogical for the ALJ to find Dr. Bolz more persuasive than Dr. Hughes and then find light work when Dr. Bolz found only sedentary work," and "the ALJ failed to build the accurate and logical bridge required of her in finding the light work." (*Id.*). The Commissioner responds that "the ALJ adopted the specific exertional limitations assessed by Dr. Bolz, including the ability to lift/carry up to 20 pounds occasionally and 10 pounds frequently and the ability stand/and or walk for 4 hours per 8-hour day." (Doc. 8 at PageID 2258). The Commissioner points out that while Dr. Bolz listed "sedentary" in the section for applying the medical-vocational rules, Dr. Bolz specified that his precise limitation to 4-hours stand/walk yielded an RFC finding "which is in between a light and sedentary." (*Id.,* citing Tr. 99).

As a preliminary matter, the plaintiff's unequivocal assertion that Dr. Bolz "found only sedentary work" mischaracterizes the record. As pointed out by the Commissioner, despite Dr. Bolz choosing sedentary work as a framework for his determination, Dr. Bolz clearly articulated that he found plaintiff to "fall[] between two not disabled rules" of "light and sedentary." (Tr.

12

99-100). Further, although the ALJ found plaintiff has the RFC to perform light work, she adopted the exertional limitations assessed by Dr. Bolz: lift and carry up to 20 pounds occasionally and 10 pounds frequently; stand and/or walk 4 hours per 8-hour day; and sit for 6 hours per 8-hour day with normal breaks. (Tr. 17, *see* Tr. 85-86). *See Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 442–43 (6th Cir. 2017) (rejecting the argument that "the ALJ's [residual functional capacity] lacks substantial evidence because no physician opined that [the claimant] was capable of light work"); *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) (rejecting the same argument because "the ALJ is charged with the responsibility of determining the [residual functional capacity] based on her evaluation of the medical and non-medical evidence"). The ALJ's conclusion finding Dr. Bolz's opinion more persuasive than Dr. Hughes' opinion is substantially supported by the record.

Plaintiff next argues that the opinions from his treating doctors, Dr. Michael Binder and Dr. Carl Fichtenbaum, "do not support a finding of light work" and asserts that the ALJ erred by failing to explain why she found them not entirely persuasive. (Doc. 7 at PageID 2242-43; *see* 20 CFR § 404.1520b(c)(v)). Dr. Binder, one of plaintiff's treating physicians, opined in September 2021 that plaintiff:

> [H]as difficulty even walking on his bad day[] and would be unable to carry or lift anything in a work-related environment on those days.
>
> . . .
>
> [H]as a difficult time finding any position to relieve his pain on his bad days[] and would be unable to sit at all for work on those days. He has had more bad days than good days. He could not reasonably be expected to work any job, sitting or standing, given the severity of his back/spine problems.
>
> . . .
>
> [Plaintiff] could not reasonably be expected to work any job, sitting or standing, given the severity of his back/spine problems.

13

(Tr. 1864, 1865, 1867).  However, Dr. Binder in the same report stated he was "unable to

determine at this time" the amount of weight plaintiff was able to lift and carry (Tr. 1864), the

number of hours plaintiff could sit total and without interruption during a workday (Tr. 1865),

whether postural activities were limited (Tr. 1866), and whether there were any environmental

restrictions on plaintiff's ability to work (Tr. 1867).

The ALJ found the assessment from Dr. Binder was "not entirely persuasive."  She found

Dr. Binder's opinion was vague and his statements that plaintiff was unable to work impinged on

a medical/legal issue reserved for the Commissioner.  (Tr. 24).  The ALJ reasonably noted that

Dr. Binder's opinion did not contain specific functional limitations and was therefore vague.

(Tr. 24-25).  In addition, the ALJ was not required to accept Dr. Binder's opinion that plaintiff

"could not reasonably be expected to work any job."  (Tr. 1867).  Whether a person is disabled

within the meaning of the Social Security Act is an issue reserved to the Commissioner.  20

C.F.R. § 404.1520b(c)(3)(i) ("[Statements that you are or are not disabled, blind, able to work, or

able to perform regular or continuing work]" suggest a particular disability determination, which

is an issue reserved to the Commissioner).  *See also Warner v. Comm'r of Soc. Sec.,* 375 F.3d

387, 390 (6th Cir. 2004) (quoting *Harris v. Heckler,* 756 F.2d 431, 435 (6th Cir. 1985) ("The

determination of disability is ultimately the prerogative of the Commissioner, not the treating

physician.")) (brackets omitted).

The ALJ also identified several inconsistencies between Dr. Binder's opinion and the

other record evidence.  The ALJ acknowledged that "[plaintiff]'s record certainly establishes his

difficulty for sitting/standing, and chronic pain."  (Tr. 24).  However, the ALJ reasonably noted

that during plaintiff's first post-surgical visit with Physician Assistant Brendan Wilson on

October 25, 2021, "[Nurse Wilson] noted [plaintiff] was doing well postoperatively with

majority resolution of his pre-surgery symptoms" and "observed [plaintiff] had made significant improvements[,] [] was in no apparent distress, [and] appeared comfortable." (*Id.*, citing 7F/18, 21). The ALJ also found Dr. Binder's opinion to be inconsistent with Dr. Fichtenbaum's examination of plaintiff on November 4, 2021, noting that Dr. Fichtenbaum's examination found [plaintiff] to be in no acute distress." (*Id.*, citing 7F/17). The ALJ reasonably noted that during the exam, Dr. Fichtenbaum found that "[plaintiff] denies any new weakness numbness/tingling, or other sensory changes, reportedly lives alone, and stopped working due to COVID in April 2020." (Tr. 24). The ALJ additionally found Dr. Binder's opinion was not consistent with plaintiff's testimony "that he is able to climb 6-8 steps to enter and exit his home" and that he experienced "good resolution of his sciatica pain since his surgery" (*Id.*, citing 7F/7, 8). The ALJ's evaluation of the consistency of Dr. Binder's opinion with the other evidence is supported by substantial evidence.

Next the ALJ considered the May 2022 findings of plaintiff's treating physician and infectious disease specialist, Dr. Fichtenbaum, who had treated plaintiff since 2006. (Tr. 25). Dr. Fichtenbaum opined that plaintiff's chronic foot and back pain make it impossible for plaintiff to stand longer than 30 minutes at a time; sit for more than 60 minutes; or lift more than 20 pounds. (Tr. 2206). Dr. Fichtenbaum also found that plaintiff's arthritis and neuropathy make it hard for him to do any job requiring walking, and he is not capable of regular employment because his conditions impair his ability to complete tasks regularly and to interact with others. (*Id.*). Dr. Fichtenbaum also submitted a medical assessment in which he opined that plaintiff was limited to lifting/carrying up to 5-10 pounds occasionally and up to 5 pounds frequently; was limited to sitting 2-4 hours during the workday, with a sit/stand option of one hour; and would need 1-2 days of rest afterwards. (Tr. 2208-09). As for his postural limitations,

15

Dr. Fichtenbaum noted that plaintiff could never climb or crawl, but he otherwise could balance, stoop, crouch, and kneel occasionally. (Tr. 2210). Additionally, Dr. Fichtenbaum stated that plaintiff should avoid heights and moving machinery due to his balance and neuropathy issues. (*Id*.). Dr. Fichtenbaum concluded that plaintiff would miss 2-4 days of work per month, or one day per week on average, due to fatigue and pain. (Tr. 2211).

Like Dr. Binder, the ALJ found the assessments from Dr. Fichtenbaum "not entirely persuasive," noting Dr. Fichtenbaum's statement referring to plaintiff being "unable to work" is an issue reserved to the Commissioner and inherently neither valuable nor persuasive. (Tr. 25). The ALJ explained her determination by discussing the lack of supportability for Dr. Fichtenbaum's opinion, noting:

> [T]here are no 2022 treatment records to support Dr. Fichtenbaum['s] opinion as the record shows [plaintiff]'s last treatment visit was in November 2021 and prior to that he had not seen [plaintiff] for 6 months between May and November 2021. On his November 2021 visit, Dr. Fichtenbaum noted [plaintiff]'s slowly improving lower left extremity numbness and muscle spasms. There was no notation or indication during this November 2021 visit that [plaintiff] experienced difficulty standing longer than 30 minutes at a time or sitting in one spot for more than 60 minutes without pain or discomfort. There are no treatment records or examinations by Dr. Fichtenbaum between November 2021 to May 2022 to support his opinion.

(*Id*., citing 7F/13). The ALJ also found Dr. Fichtenbaum's opinion was inconsistent with the other medical and non-medical sources of record. The ALJ reasonably determined that Dr. Fichtenbaum's opinion conflicted with plaintiff's report that he was not experiencing "any new numbness/tingling, weakness, saddle paresthesia's or other sensory changes"; plaintiff's testimony that "he has no difficulty dressing himself, he cooks, hand wash[es] dishes, sweeps, mops[,] and utilizes bus passes for public transportation"; and plaintiff's testimony that he can "lift and carry 2 gallons of water." (Tr. 25). The ALJ found that "Dr. Fichtenbaum's opinion is not entirely supported and not consistent with the overall record. It is accorded some partial

16

consideration to the extent supported by specific and complete clinical findings and are

consistent with the rest of the evidence in file." (Tr. 26). The ALJ properly addressed the

consistency and supportability factors in evaluating the opinions of plaintiff's treating

physicians, and substantial evidence supports the ALJ's decision to find those decisions partially

persuasive.

"[The ALJ]'s residual functional capacity finding does not need to correspond to a

particular physician's opinion. No bright-line rule exists in our circuit directing that medical

opinions must be the building blocks of the residual functional capacity finding, but the

administrative law judge must make a connection between the evidence relied on and the

conclusion reached. The administrative law judge made that connection here." *Tucker v.*

*Comm'r of Soc. Sec.*, 775 F. App'x 220, 226 (6th Cir. 2019) (citing *Rudd v. Comm'r of Soc. Sec.*,

531 F. App'x 719, 728 (6th Cir. 2013) (rejecting the argument that the administrative law judge

is required to base her determination on a physician's opinion)). Given the ALJ's explanation of

her decision to accord partial consideration to Dr. Binder's and Dr. Fichtenbaum's opinions "to

the extent [they are] supported by specific and complete clinical findings and are consistent with

the rest of the evidence in the file," the ALJ's determination is supported by substantial evidence.

(Tr. 25, 26).

Further, the Court finds no error with the ALJ's assessment of plaintiff's physical

symptoms and HIV-related fatigue. The ALJ considered plaintiff's testimony about his alleged

limitations due to fatigue, as well as the medical opinions and evidence in the record. The ALJ

found the evidence "consistent with a finding that the [plaintiff] has moderate limitations in

concentrating, persisting, or maintaining pace." (Tr. 16). However, the ALJ found Dr.

Fichtenbaum's opinion about plaintiff's fatigue and need for rest to be "invalidated" by the

records indicating plaintiff's HIV treatment "is working as expected with no reported side effects" and that he had "no new HIV/AIDS illness or other clinical problems" between May 2021 and May 2022. (Tr. 25-26). The ALJ reasonably accommodated plaintiff's reported fatigue with the following limitations: limited to simple instructions in 2-hour segments; never climb ladders, ropes or scaffolds, and avoid operating heavy machinery and commercial driving. (Tr. 22, 26).

Plaintiff raises the additional error that he "was only five weeks short of age 50 on the date of the ALJ denial decision." (Doc. 7 at PageID 2238, 2241, 2247). Plaintiff states that if the ALJ had considered his age borderline and limited him to only sedentary work, then he would be disabled under the Grid.

As an initial matter, plaintiff does not meet the regulatory threshold for applying an older age category. The pertinent regulation provides, "If you are within a few days to a few months of reaching an older age category, *and using the older age category would result in a determination or decision that you are disabled*, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case." 20 C.F.R. § 404.1563(b) (emphasis added). For the reasons discussed above, the ALJ's finding that plaintiff has an RFC for a limited range of light work—and not an RFC for sedentary work—is supported by substantial evidence. Therefore, any alleged failure of the ALJ to discuss a potential "borderline" age situation is not reversible error.

In any event, while the regulations allow for "some flexibility between the age categories in 'borderline' situations," this is not such a case. *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 396 (6th Cir. 2008). "In considering age as a vocational factor, the regulations provide that age means your chronological age and that the Administration will use the age categories in

18

paragraphs (c) through (e) of 20 C.F.R. § 404.1563."  *Id.* at 399.  "While an ALJ may need to

provide, in cases where the record indicates that use of a higher age category is appropriate,

some indication that he considered borderline age categorization in order to satisfy a reviewing

court that his decision is supported by substantial evidence, § 1563(b) does not impose on ALJs a

per se procedural requirement to address borderline age categorization in every borderline case."

*Id.;* 20 C.F.R. § 404.1563(b).

In addition, when deciding whether to "veer from a claimant's chronological age in a

borderline situation" ALJs may consider whether the claimant has presented "additional

vocational adversities."  *Bowie*, 539 F.3d at 399 (citing Rule 201.18, App. 2 to Subpart P of 20

C.F.R. § 404; HALLEX II–5–3–2).  While plaintiff's chronological age may be borderline, he

does not identify any vocational adversities that were not already considered by the ALJ in

determining plaintiff's RFC.  Because the ALJ's physical RFC determination is based on

substantial evidence, the ALJ did not err by using plaintiff's chronological age in making her

determination.

### b.  Mental RFC Finding

Plaintiff argues the ALJ's mental RFC finding is in error because the medical opinions

she found to be persuasive do not support the limitation of "occasional contact with others."

(Doc. 7 at PageID 2243).  The Commissioner responds by pointing out that the ALJ "adopted

social interaction limitations" to accommodate for plaintiff's mental health impairments.  (Doc. 8

at PageId 2256).

In June 2021, consultative examiner Jennifer Stoeckel, Ph.D.[7], found on mental status

examination that plaintiff was alert and oriented and functioning at the average range

---

[7] In the administrative decision, the ALJ refers to Dr. Stoeckel as Dr. Michael Farrell, Ph.D.  Dr. Farrell's name is

intelligence. Plaintiff reported to Dr. Stoeckel that he had one psychiatric admission in January 2018 and was hospitalized for one week. (Tr. 1858). Plaintiff reported irritability, agitation and moody dysregulation that sometimes results in him getting "assaultive," including a recent incident at Walmart. (*Id*.). Dr. Stoeckel characterized plaintiff's prognosis as "guarded," stating that he remains symptomatic and reported "frequent episodes of rage and physical aggression." (Tr. 1861). She noted that plaintiff admitted to homicidal thoughts, exhibiting aggressive behavior, being argumentative, and always being angry. (Tr. 1860). Dr. Stoeckel diagnosed plaintiff with an unspecified bipolar and related disorder as well as mild cannabis abuse. She assessed that plaintiff would have difficulty acquiring new skills without repetitions and maintaining focus and attention for work-related tasks. She also opined that plaintiff had significantly compromised ability to work in close proximity to others and would struggle managing workplace conflicts, stress, or independent decision making. (Tr. 1856-62). When asked to describe the claimant's abilities and limitations in responding appropriately to supervision and coworkers in a work setting, she stated:

> Mr. Walker historically has been physically aggressive with others. He reports that he is easily enraged, has attempted to control his behavior, but is not always successful. He can become verbally and physically threatening and acknowledges that he is unable at times to manage his mood. He reports being terminated in the past from work at UC Hospital due to interpersonal issues with the manager. Given the aforementioned, his ability to work in close proximity to others, under direct supervision, or with the general public is significantly compromised.

(Tr. 1862).

When assessing Dr. Stoeckel's opinion, the ALJ found it "somewhat persuasive." (Tr. 24). The ALJ noted that Dr. Stoeckel only saw plaintiff once and not in a treating context. The ALJ also found the opinion "rather vague" and missing work-related limitations, noting that Dr.

---

listed on the letterhead of the report as the primary psychologist in the practice.

Stoeckel simply noted that plaintiff is "compromised" and "would struggle" and "would likely have difficulty." (*Id.*). Despite the ALJ's conclusion that the opinion was vague, she found the opinion generally consistent with the overall record and somewhat supported by Dr. Stoeckel's exam findings and observations. (*Id.*).

State agency psychologist Aracelis Rivera, Psy.D., reviewed plaintiff's file initially in July 2021 and assessed that plaintiff had the capacity to carry out a simple learned routine in a structured and predictable work setting where changes could be explained. (Tr. 87-88). Dr. Rivera noted plaintiff's social interaction limitations make him "susceptible to misinterpreting interpersonal nuance" and limited him to "relat[ing] adequately on a superficial basis in an environment that entails infrequent public contact, minimal interaction with coworkers, and no over-the-shoulder supervisor scrutiny." (Tr. 87). Upon reconsideration, David Dietz, Ph.D., reviewed plaintiff's file in December 2021 and adopted Dr. Rivera's assessment. (Tr. 97-98). The ALJ found the prior administrative medical findings of Dr. Rivera and Dr. Dietz to be "somewhat persuasive" but noted that they included "rather vague" language including "superficial" and "infrequent public contact" and "minimal interaction with coworkers." (Tr. 23-24).

The ALJ engaged in a lengthy discussion of plaintiff's mental health symptoms and difficulties with social interactions. (Tr. 22). The ALJ found plaintiff's "testimony about his social problems is somewhat supported," noting:

> Examinations found the claimant alert and cooperative and able to communicate with therapist and verbalize understanding of directions/instructions (7F/8). On the other hand, is his record during COVID reporting that he has had some problems interacting with his clinical staff. The effects of COVID isolation may have exacerbated his aggravation and his outburst is certainly indicative of his moderate limitations in this domain of functioning. On the other hand, the claimant testified that since his alleged onset date, he has been using bus passes for public transportation and there is no indication in the record that the claimant has difficulty

21

accessing the community or responding to the different situations that may occur while making use of public transportation and he is able to do so without the assistance of another individual.

(*Id*.). Based on her evaluation of the record evidence, the ALJ limited the plaintiff to "occasional (no more than one-third of workday) interaction with [the] public, coworkers, and supervisors, with no tandem tasks, nor requirement for arbitration, conflict resolution, management or supervision of others." (Tr. 22). The ALJ placed additional restrictions on the type of work that plaintiff can perform, including limitations on complexity of tasks. (*Id*.).

Plaintiff appears to argue the ALJ erred by finding Dr. Rivera's opinion—limiting plaintiff's interactions to a "superficial basis in an environment with infrequent public contact and minimal interaction with coworkers"—partially persuasive (Tr. 23) but then adopting a different limitation of allowing only "occasional (no more than one-third of the workday)" interaction with others and no tandem tasks (Tr. 24). (Doc. 7 at PageID 2243). The ALJ is, however, under no obligation to adopt Dr. Rivera's specific limitations in crafting plaintiff's RFC. "Even where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale." *Reeves v. Comm'r of Soc. Sec*., 618 F. App'x 267, 275 (6th Cir. 2015). Further, the ALJ gave only "some weight" to the state agency psychologists' opinions, indicating she was not adopting their opinions in full. (Tr. 23-24). *See Pitts v. Comm'r of Soc. Sec*., No. 1:19-cv-1003, 2021 WL 235827, at *4 (S.D. Ohio Jan. 25, 2021) (Report and Recommendation), *adopted*, No. 1:19-cv-1003, 2021 WL 735222 (S.D. Ohio Feb. 25, 2021). The ALJ considered the medical opinions and plaintiff's testimony about accessing community resources and reasonably determined that plaintiff was limited to "occasional" interaction with others.

Plaintiff also argues that because he has no control over the nature of his interactions on the job, the ALJ erred by not incorporating a qualitative limitation on those interactions.  (Doc. 7 at PageID 2243-44, citing *Lindsey v. Comm'r of Soc. Sec.*, No. 2:18-cv-18, 2018 WL 6257432, at *4 (S.D. Ohio Nov. 30, 2018) (Report and Recommendation), *adopted*, 2019 WL 133177 (S.D. Ohio Jan. 8, 2019) (remanding because the ALJ failed to adequately explain his decision to limit plaintiff to "occasional interaction with others" rather than "superficial contact with the public, coworkers, or supervisors" and stating that the terms "occasional" and "superficial" cannot be interchanged).  The Commissioner responds by arguing that the ALJ did include appropriate qualitative restrictions by limiting plaintiff to "no tandem tasks and no requirement for arbitration, conflict resolution, management or supervision of others" and cites cases in this district finding that "a limitation of no tandem tasks . . . is a qualitative limitation that adequately accounts for an opinion limiting plaintiff to superficial interactions with others."  (Doc. 8 at PageID 2259-60).

The Court finds that the ALJ adequately addressed plaintiff's qualitative restrictions by limiting him to "no tandem tasks [and] no requirement for arbitration, conflict resolution, management or supervision of others."  (Tr. 22).  To the extent plaintiff suggests the ALJ should have included limitations on "superficial" contact with others, plaintiff's argument is not well taken.  As this Court has previously recognized, ALJs may be required to convert opined limitations into vocationally relevant terms before incorporating such limitations into an RFC and hypothetical question to a VE.  *See Aalijah W. v. Comm'r of Soc. Sec.*, No. 2:23-cv-1955, 2024 WL 1714484, at *6 (S.D. Ohio Apr. 22, 2024) (Report and Recommendation), *adopted,* 2024 WL 2315290 (S.D. Ohio May 22, 2024); *Brian M. v. Comm'r of Soc. Sec.*, No. 2:23-cv-2649, 2024 WL 2059775, at *6 (S.D. Ohio May 8, 2024) (Report and Recommendation),

*adopted*, 2024 WL 2702009 (S.D. Ohio May 23, 2024). As the undersigned explained in *Aalijah W.*:

> Several courts within the Sixth Circuit have found that a restriction against "tandem tasks" or similar terms is a vocationally relevant equivalent for the qualitative connotation of the term "superficial." *See Kelsey v. Comm'r of Soc. Sec.*, No. 1:22-cv-280, 2022 WL 18358921, at *6 (W.D. Mich. Dec. 29, 2022) (restricting the plaintiff "to no interaction with the public, occasional interaction with supervisors and coworkers, and no tandem or cooperative tasks" represented "significant limitations . . . on the quality of the interaction, essentially amounting to no more than superficial contact with supervisors and coworkers") (Report and Recommendation), *adopted*, 2023 WL 246884 (W.D. Mich. Jan. 18, 2023); *Stamper v. Comm'r of Soc. Sec.*, No. 1:20-cv-467, 2021 WL 5577405, at *14 (S.D. Ohio Nov. 30, 2021) ("Given [the ALJ's thorough review of medical records reflecting generally normal mental health findings] and the fact that the ALJ included limitations on the nature/quality (as opposed to only the frequency) of interactions, the Court finds that the ALJ's mental RFC determination took the state agency psychologists' opinions regarding 'superficial' interactions into account and was based on substantial evidence.") (report and recommendation), *adopted sub nom. Stamper v. Kijakazi*, 2022 WL 1183234 (S.D. Ohio Apr. 21, 2022); *Dickinson v. Comm'r of Soc. Sec.*, No. 2:19-cv-3670, 2020 WL 4333296, at *12 (S.D. Ohio July 28, 2020) ("The Court agrees that the limitation to no tandem tasks is a qualitative limitation on social interaction. As such, this limitation adequately addressed the opinion of [the state agency consultants] that Plaintiff be limited to superficial interaction with others.") (report and recommendation), *adopted*, 2020 WL 5016823 (S.D. Ohio Aug. 25, 2020); *Kearns v. Comm'r of Soc. Sec.*, No. 3:19-cv-1243, 2020 WL 2841707, at *12 (N.D. Ohio Feb. 3, 2020) ("[T]he ALJ's limitation to no team or tandem tasks is a qualitative limitation on social interaction and adequately addressed the opinion of [the state agency consultants] that Kearns be limited to superficial interaction with others.") (report and recommendation), *adopted*, 2020 WL 2839654 (N.D. Ohio June 1, 2020); *Collins v. Comm'r of Soc. Sec.*, No. 3:17-cv-2059, 2018 WL 7079486, at *6 (N.D. Ohio Dec. 7, 2018) ("[T]he ALJ restricted Plaintiff from 'team or tandem tasks' (Tr. 15), which logically require more than superficial interpersonal contact. This is a restriction on the quality of interpersonal contact.") (report and recommendation), *adopted*, 2019 WL 1409535 (N.D. Ohio Mar. 28, 2019).

*Aalijah W.*, 2024 WL 1714484, at *6. Based on the foregoing, the ALJ properly converted the

word "superficial" into vocationally relevant terms for incorporation into her RFC determination.

Lastly, plaintiff argues the ALJ erred in her evaluation of plaintiff's mental health

symptoms by stating that the symptoms are "treated with Remeron with relief" (Doc. 7 at PageID

2243, citing Tr. 22), pointing to records related to plaintiff's visits with Susan McIlvain, LISW-S, that allegedly support plaintiff's "history of impulsivity and borderline traits." (*Id.* at 2156). The Commissioner responds by arguing that the ALJ did not err because she relied on plaintiff's own testimony that Remeron helps treat his depression and anxiety. (Doc. 8 at PageID 2256).

Plaintiff argues the ALJ erred when she found Remeron "relieves" plaintiff's mental health symptoms. Contrary to plaintiff's argument, the ALJ reasonably noted that Remeron helps plaintiff's symptoms (Tr. 16, 18, 22), and the ALJ made no finding that Remeron completely "relieves these symptoms" (Doc. 7 at PageID 2246) as plaintiff alleges. Rather, the ALJ acknowledged that plaintiff's mental health symptoms fluctuated throughout the relevant time period and were triggered by large crowds, marijuana use, and COVID isolation. (Tr. 22). The ALJ also noted that plaintiff has not required psychiatric hospitalization or inpatient treatment for his mental health symptoms and has not required a structural environment to avoid decompensation of his condition. (*Id.*). The ALJ reasonably considered plaintiff's use of Remeron as one factor in assessing plaintiff's subjective mental symptoms, and the ALJ's determination is supported by substantial evidence.

### 2. Vocational Errors

Plaintiff alleges the ALJ erred by posing "improper hypothetical questions to the vocational expert" that "did not include all of the supported limitations from the nervous impairments." (Doc. 7 at PageID 2246, citing Tr. 71-74). Plaintiff also states "[t]he ALJ erred as a matter of law in not obtaining any specific unskilled sedentary jobs" because the ALJ "cannot use the grid alone for sedentary work when she found numerous non-exertional limitations in Finding 5 due to the nervous impairments." (Doc. 7 at PageID 2246). The Commissioner argues that plaintiff's allegation is an attempt to argue for greater limitations in

the ALJ's RFC determination, and therefore lacks merit because the ALJ's RFC determination is supported by substantial evidence.  (Doc. 8 at PageID 2261).

Plaintiff's argument that the ALJ erred in Step Five of the sequential evaluation process by posing "improper hypothetical questions to the vocational expert" is not well taken.  (Doc. 7 at PageID 2246).  "To constitute substantial evidence in support of the Commissioner's burden, the hypothetical question posed to the VE must accurately reflect the claimant's physical and mental limitations."  *Chasidy M. v. Comm'r of Soc. Sec.*, No. 2:21-cv-4679, 2022 WL 2712216, at *9 (S.D. Ohio July 13, 2022) (citing *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002); and *Varley v. Sec'y of H.H.S.*, 820 F.2d 777, 779 (6th Cir. 1987)).  Plaintiff does not specify which limitation the ALJ failed to incorporate into her posed hypothetical.  Further, plaintiff's argument effectively restates his assignments of error related to the ALJ's determination of plaintiff's RFC, which is analyzed in detail above.  *See Winslow v. Comm'r of Soc. Sec.*, 566 F. App'x 418, 421-22 (6th Cir. 2014) (quoting *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)) ("It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact.").

Plaintiff also alleges the ALJ erred by failing "to identify any sedentary jobs for him in her step 5 burden under 20 CFR 404.1520."  (Doc. 7 at PageID 2246).  Plaintiff's argument incorrectly assumes plaintiff's RFC was limited to sedentary work.  As discussed above, the ALJ's finding of a limited range of light work is substantially supported by the record, and the ALJ had no duty to identify sedentary jobs to meet her Step Five burden.  Plaintiff's assignment of error is overruled.

### III.     Conclusion

Based on the foregoing, plaintiff's statement of errors (Doc. 7) is **OVERRULED**, and the Commissioner's non-disability finding is **AFFIRMED**.  **IT IS THEREFORE ORDERED** that judgment be entered in favor of the Commissioner and this case is closed on the docket of the Court.

Date: 2/25/2025

Karen L. Litkovitz
United States Magistrate Judge

27